1

2

3                IN THE UNITED STATES DISTRICT COURT

4            FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6

7

8  KARLOS L. FRYE,                      No. C 08-5288 CW

9          Plaintiff,                   ORDER GRANTING
                                        DEFENDANTS' MOTION
10     v.                               FOR SUMMARY
                                        JUDGMENT
11 OFFICER OLESHEA, et al.,

12         Defendants.

13 ═══════════════════════════════/

14

15     Plaintiff Karlos L. Frye, an inmate at Salinas Valley State

16 Prison (SVSP), has filed a civil rights complaint alleging that

17 SVSP correctional officers violated his constitutional rights

18 under the Fourteenth, Eighth and Fourth Amendments by subjecting

19 him to two unclothed body searches and then placing him on

20 contraband watch for approximately forty-eight hours. [1]

21 Defendants Correctional Officers D. Oleachea,[2] A. Quitevis, J.

22 Mora, Greeson, Newby, D. White, Nolta, Milenewicz and William

23 Muniz, Sergeants M. Nilsson and L. Watson and Lieutenant W.

24

25 ─────────────
        [1] Plaintiff's Equal Protection claim was dismissed without
26 leave to amend in the Court's September 28, 2010 Order.

27     [2] Defendant Oleachea's name is misspelled as Oleshea in the
   complaint.
28

United States District Court
For the Northern District of California

Showalter move for summary judgment on all of Plaintiff's claims. [3]
Plaintiff has filed an opposition and Defendants have filed a
reply.  The motion was taken under submission and decided on the
papers.  Having considered all the papers filed by the parties,
the Court grants the motion for summary judgment.

BACKGROUND

For his version of events, Plaintiff cites his First Amended
Complaint (1AC), which is signed under penalty of perjury, and the
declaration, dated December 11, 2007, he submitted with his
administrative 602 appeal, which is attached as Exhibit A to his
1AC.  In his 1AC, Plaintiff states as follows:

> Six officers rushed in the visiting room led by Officer
> Oleachea and demanded that I along with my mother come with
> them and submit to a strip search.  I asked Officer why were
> they doing this strip search and also why were they
> terminating my visit?  Officer John Doe responded by saying
> that he observed my mother making suspicious movements. At
> that point my visit was terminated.
>
> I was then taken back to the area where inmate visitors are
> received and made to submit to a strip search.  After the
> strip search produced negative results I asked if I could go
> back and finish my visit, but I was then aggressively placed
> in handcuffs and told my visit was terminated. . . .
>
> The officers became extremely aggressive and hostile, grabbed
> me forcefully by the arm and started to escort me from the
> area.  I was escorted back to my housing unit and
> aggressively put in my cell.  Immediately afterwards, the
> officers came back to my cell and aggressively demanded that
> I cuff up.  I again complied, at which I was again
> aggressively and forcefully snatched from my cell and taken
> aggressively to a holding cage at the D facility patio area,
> where once again I was told to submit to another strip

---

[3] Defendants' first names are not provided.

search.  Approximately 30 to 45 minutes later I was placed in waist restraints with only a pair of underwear. . . .

1AC, Ex. A at 3-4.

Plaintiff further states the following.  After he was taken from the holding cell, he was forced to kneel down on a chair and was placed in leg restraints.  Then he was told to stand up.  Two unknown officers taped Plaintiff's underwear to his bare skin at the waist and the legs.  Plaintiff, wearing only his underwear, was then taken outside, where it was cold and windy, to the "feces-watch building."

In this building, the conditions were harsh and inhumane. Plaintiff could see the goose bumps on his arm and legs and he was shaking from the cold.  Plaintiff was then taken to the C facility and placed in a cell with only a small wooden bench and a toilet that was covered with plastic bags and masking tape.  The room had little flies and bugs in it and the stench was horrible.

On the first day, Plaintiff was not given a shirt or a mattress.  Bright lights were kept on all of the time.  Plaintiff tried not to fall asleep, but dozed off while he was sitting on the bench, fell off the bench and injured his shoulder.

Plaintiff was not provided with utensils with which to eat his food nor was he allowed to wash his hands.  Plaintiff's waist and leg restraints were not taken off and, in order to eat, he had to place his food tray on the bench and get down on his knees and "eat like a savage animal."  There was a foul-smelling bucket in

United States District Court
For the Northern District of California

which Plaintiff relieved himself.  Defendants Mora, Corona, White, Nolte and Milenewicz laughed when the tape was ripped off his skin so that he could relieve himself.  Plaintiff was not provided with toilet paper and, as a result, his hands were smeared with feces. He was not given soap and water to wash his hands and was forced to eat his food with his dirty hands.  Plaintiff was released from these conditions on Tuesday, December 4, 2007 at approximately 1:00 pm.  Plaintiff had been subjected to these inhumane conditions for almost two days.

Plaintiff's fiancée is white and Plaintiff alleges that he was profiled or subjected to race discrimination because he and his fiancée are of different races.  In his complaint, Plaintiff alleges that other inmates and visitors in the visiting room, who were not racially mixed, were eating with their families and were not subjected to being searched like he was.  However, in the declaration he submitted with his 602 appeal, Plaintiff states that he and his family were the only visitors in the visiting room.

Defendants' version of events is as follows.  During Plaintiff's visit with his family, Defendant Officer Oleachea observed Plaintiff swallow an item Officer Oleachea believed to be contraband.  Other officers noticed Ms. Frye, Plaintiff's mother, attempting to conceal unidentified items in her clothing. Officers advised Ms. Frye of their observations and told her to enter the women's restroom.  At the same time, Plaintiff was

**United States District Court**
For the Northern District of California

escorted to another room for an unclothed body search.  Ms. Frye rushed ahead of the officers and into the restroom where she started to shake out her clothing.  Several items fell to the floor from Ms. Frye's clothing.  When Ms. Frye did not consent to a search, she was escorted to the visiting room and removed from the building.

Plaintiff was immediately put on contraband watch.  SVSP personnel conduct contraband watches in accordance with SVSP Operational Procedure 38, which provides for placing the inmate in a holding cell under continuous observation by an officer.  The inmate is permitted to wear a t-shirt, boxer shorts and socks. The cell is to contain only a mattress and no other accommodations.  The inmate is fed on a paper tray with one plastic utensil.  Approximately every thirty minutes, officers record pertinent activities or observations.

During the time Plaintiff was on contraband watch, a record of his daily activities was maintained by the on-duty officers. Plaintiff was given a t-shirt and a blanket his first night on contraband watch.  On his second night, he was given a mattress. During the contraband watch, Plaintiff had two bowel movements and both were negative for contraband.  Plaintiff was released into the general population approximately fourteen and one-half hours after his first bowel movement.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56.  Celotex Corp v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1289 (9th Cir. 1987).  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

DISCUSSION

I. Fourteenth Amendment Procedural Due Process Claim

Plaintiff claims that his procedural due process rights were violated because he was placed on contraband watch without notice or a hearing.

Interests that are procedurally protected by the due process clause may arise from two sources--the due process clause itself and laws of the states.  Meachum v. Fano, 427 U.S. 215, 223-27

(1976).   In the prison context, these interests are generally ones pertaining to liberty.   Changes in conditions so severe as to affect the sentence imposed in an unexpected manner implicate the due process clause itself, whether or not they are authorized by state law.   Sandin v. Conner, 515 U.S. 472, 484 (1995). Deprivations that are authorized by state law and are less severe or more closely related to the expected terms of confinement may also amount to deprivations of a procedurally protected liberty interest only if they impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id.

Whether a restraint is "atypical and significant" under Sandin requires case-by-case consideration.   Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003).   Typically, a court should consider the following factors: "1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence."   Id. at 861.

Defendants argue that, even if a liberty interest is implicated by placement in contraband-watch, Plaintiff's forty-eight hour placement was too short to trigger due process protection.   Defendants cite Meraz v. Reppond, 2009 WL 723841, *2

United States District Court
For the Northern District of California

(N.D. Cal.), in which the district court found that the plaintiff's seventy-two hour placement on contraband watch did not amount to atypical and significant hardship within the correctional system.  The court stated, "Although the conditions in the contraband watch were more onerous than those plaintiff normally faced in prison, his placement was simply too brief to implicate the Due Process Clause."  Id.

Plaintiff cites Mendoza v. Blodgett, 960 F.2d 1425, 1429 (9th Cir. 1992), where the Ninth Circuit held that the prison's former dry cell watch[4] regulation created a liberty interest because it provided particularized standards and criteria for its implementation and duration.  Id.  The plaintiff was held in a contraband-watch cell for twenty-four hours.  Id.  The court held that a hearing five days after the watch ended was insufficient to accord the prisoner due process.  Id. at 1431.[5]

Mendoza is inapplicable here because it was decided before Sandin v. Conner, which changed the analysis for determining due process violations in a prison setting.  In Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995), the Ninth Circuit explained that Sandin overruled Ninth Circuit cases that looked at the language of a prison regulation to determine if it created a liberty interest.  The Mujahid court stated:

---

[4] This is another name for contraband watch.

[5] In a later section, the court held that the defendants were entitled to qualified immunity on this claim.  Id.

> In Sandin, the Court determined that prison regulations on confinement of an inmate did not create a liberty interest. In making its decision the Court did not rely on the language of the regulations . . . . Rather the Court focused on the particular discipline imposed and held that "it did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest."

Id.  The Mujahid court held that there was no liberty interest implicated in being held in disciplinary segregation for fourteen days.  Id.

Here, Plaintiff was on contraband watch for less than two days.  This is less than the three-day contraband watch that the Meraz court found to be too short to implicate the due process clause.  Furthermore, the contraband watch did not affect the duration of Plaintiff's prison sentence.  Therefore, although the conditions Plaintiff had to endure on contraband watch were harsh, they did not impose the kind of atypical and significant hardship in relation to the ordinary incidents of prison life that would implicate due process protection.  Because Plaintiff's due process rights were not violated, the Court need not address what process was due.

Furthermore, Defendants are entitled to qualified immunity on this claim.  The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  A defendant may have a reasonable, but mistaken, belief

**United States District Court**
For the Northern District of California

about the facts or about what the law requires in any given

situation.  <u>Saucier v. Katz</u>, 533 U.S. 194, 205 (2001).  The

threshold question in qualified immunity analysis is:  "Taken in

the light most favorable to the party asserting the injury, do the

facts alleged show the officer's conduct violated a constitutional

right?"  <u>Id.</u> at 201.  A court considering a claim of qualified

immunity must determine whether the plaintiff has alleged the

deprivation of an actual constitutional right and whether such

right was "clearly established."  <u>Pearson v. Callahan</u>, 555 U.S.

223, 231 (2009).  Where there is no clearly established law that

certain conduct constitutes a constitutional violation, the

defendant cannot be on notice that such conduct is unlawful.

<u>Rodis v. City & County of San Francisco.</u>, 558 F.3d 964, 970-71

(9th Cir. 2009).  The relevant, dispositive inquiry in determining

whether a right is clearly established is whether it would be

clear to a reasonable defendant that his conduct was unlawful in

the situation he confronted.  <u>Saucier</u>, 533 U.S. at 202.

On these facts, viewed in the light most favorable to

Plaintiff, Defendants prevail as a matter of law on their

qualified immunity defense because the Court has found no due

process violation.  However, even if a constitutional violation

had occurred with respect to Plaintiff's due process claim, in

light of clearly established principles at the time of the

incident, Defendants could have reasonably believed their conduct

was lawful.  <u>See</u> <u>Mujahid</u>, 59 F.3d at 932 (fourteen days in

10

**United States District Court**
For the Northern District of California

1  disciplinary segregation did not implicate due process

2  protection).

3       The Court grants Defendants' motion for summary judgment on

4  Plaintiff's due process claim.

5  II. Eighth Amendment Claim

6       Plaintiff claims that, by placing him on contraband watch,

7  Defendants violated his Eighth Amendment right to be free from

8  cruel and unusual punishment.

9

10      The treatment a prisoner receives in prison and the

11  conditions under which he is confined are subject to scrutiny

12  under the Eighth Amendment.  Helling v. McKinney, 509 U.S. 25, 31

13  (1993).  In its prohibition of "cruel and unusual punishment," the

14  Eighth Amendment places restraints on prison officials, who may

15  not, for example, use excessive force against prisoners.  Hudson

16  v. McMillian, 503 U.S. 1, 6-7 (1992).  The Eighth Amendment also

17  imposes duties on these officials, who must provide all prisoners

18  with the basic necessities of life, such as food, clothing,

19  shelter, sanitation, medical care and personal safety.  Farmer v.

20  Brennan, 511 U.S. 825, 832 (1994); DeShaney v. Winnebago County

21  Dep't of Social Servs., 489 U.S. 189, 199-200 (1989).

22

23      A prison official violates the Eighth Amendment when two

24  requirements are met: (1) the deprivation alleged must be,

25  objectively, sufficiently serious, Farmer, 511 U.S. at 834 (citing

26  Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the prison

27

28

official must possess a sufficiently culpable state of mind, id. (citing Wilson, 501 U.S. at 297).

In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, a court must consider the circumstances, nature, and duration of the deprivation.  The more basic the need, the shorter the time it can be withheld.  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000).  Prison conditions that are restrictive and harsh are part of ordinary prison life and do not fall under Eighth Amendment protection.  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Only those deprivations denying the minimal civilized measure of life's necessities are sufficient to implicate the Eighth Amendment.  Hudson, 503 U.S. at 9; see e.g., Johnson, 217 F.3d at 732-733 (substantial deprivations of shelter, food, drinking water and sanitation for four days sufficiently serious to satisfy objective component of Eighth Amendment claim); Hearns v. Terhune, 413 F.3d 1036, 1041-42 (9th Cir. 2005) (allegations of serious health hazards in disciplinary segregation yard for period of nine months enough to state claim of unconstitutional prison conditions).

Plaintiff's placement on contraband watch for less than two days was not long enough to rise to the level of an Eighth Amendment violation; he was released and returned to the general population as soon as officers were satisfied that he had not hidden contraband in his body.  See Meraz, 2009 WL 723841, at *2

(seventy-two hour contraband watch did not amount to Eighth Amendment violation).  Furthermore, the types of deprivations that Plaintiff endured were not sufficiently serious to implicate the Eighth Amendment.  See Hernandez v. Denton, 861 F.2d 1421, 4124 (9th Cir. 1988), judgment vacated on other grounds, 493 U.S. 801 (1989) (sleeping without a mattress for one night insufficient to state Eighth Amendment violation and no amendment can alter that insufficiency); Minifield v. Butikofer, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (four-hour deprivation of ventilation and water not an Eighth Amendment violation); Evans v. Fogg, 466 F. Supp. 949, 950-51 (S.D.N.Y. 1979) (housing in a refuse-strewn cell for twenty-four hours and in a flooded cell for two days did not amount to cruel and unusual punishment); Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982) (two days in dirty, hot cell without water did not rise to Eighth Amendment violation).

Plaintiff cites out-of-circuit cases holding that confinement in a cell with unsanitary conditions constituted an Eighth Amendment violation.  However, in these cases the inmate was confined for a longer period or the conditions were more egregious than in Plaintiff's case.  See e.g., Young v. Quinlan, 960 F.2d 351, 363 (3rd Cir. 1992) (unsanitary living conditions for four days constituted Eighth Amendment violation); Kimbrough v. O'Neil, 523 F.2d 1057, 1058-59 (7th Cir. 1975) (pretrial detainee's three days in solitary confinement with no toilet, water or mattress and

where water was thrown on him at night was Eighth Amendment violation).

Plaintiff also argues that his placement on contraband watch violated the Eighth Amendment because he and his fiancée are of different races and, thus, Defendants' conduct was motivated by racial discrimination.  He concludes that he and his family were targeted on the basis of race because all the other families in the visiting room were of the same race, and Plaintiff and his mother were the only people asked to submit to a strip search. However, in the December 11, 2007 declaration attached to his 602 appeal, Plaintiff states contradictorily that he, his mother and fiancée were the only visitors in the visiting room when Officer Oleachea demanded that he and his mother submit to a strip search. Thus, Plaintiff presents no evidence to create a dispute of fact that Officer Oleachea, or any officer, was motivated by racial animus; Plaintiff cannot create a dispute of fact by contradicting himself.

Officer Oleachea explains his motivation by stating that, on December 2, 2007, he was assigned to patrol the SVSP visiting room and was responsible for observing the interactions between inmates and their visitors to ensure that no contraband was passed from the visitor to the inmate.  Oleachea Dec. ¶ 5.  Officer Oleachea observed Plaintiff, in his mother's presence, place an unknown item in his mouth.  Oleachea Dec. ¶ 7.  Suspecting that Plaintiff may have sought to conceal contraband by ingesting it, Officer

Oleachea conducted an unclothed body search of Plaintiff, but did not find any contraband.  Id.  Officer Oleachea and another officer escorted Plaintiff to his cell and, because he had lost visual contact with Plaintiff while Plaintiff was inside his cell, Officer Oleachea conducted another unclothed body search of Plaintiff, with negative results.  Oleachea Dec. ¶ 8.  After these two searches, Officer Oleachea was relieved by additional staff and had no further dealings with Plaintiff.  Id.  Thus, Officer Oleachea only conducted the strip searches; he was not responsible for the conditions in the contraband watch cell.

Accordingly, Plaintiff's Eighth Amendment rights were not violated.  Furthermore, viewing the facts in the light most favorable to Plaintiff, Defendants prevail as a matter of law on their qualified immunity defense because the record establishes no Eighth Amendment violation occurred.  Even if a constitutional violation had occurred, in light of clearly established principles at the time of the incident, Defendants could have reasonably believed that placing Plaintiff on contraband-watch, under the conditions he describes, for a two-day period after an officer observed him ingesting what could have been contraband, was lawful.

Therefore, Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claim is granted.

III. Fourth Amendment Claim Against Oleachea and Quitevis

Plaintiff claims that Officers Oleachea and Quitevis violated his Fourth Amendment right to be free from unreasonable searches when they performed two invasive strip searches without reasonable suspicion.

The Fourth Amendment proscribes "unreasonable searches and seizures." U.S. Const. amend. IV; Allen v. City of Portland, 73 F.3d 232, 235 (9th Cir. 1995); Franklin v. Foxworth, 31 F.3d 873, 875 (9th Cir. 1994). The Fourth Amendment applies to the invasion of bodily privacy in prisons and jails. Bull v. City and County of San Francisco, 595 F.3d 964, 974-75 (9th Cir. 2010) (en banc). To analyze a claim alleging a violation of this privacy right, the court must apply the test set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and determine whether a particular invasion of bodily privacy was reasonably related to legitimate penological interests. Bull, 595 F.3d at 973. Prisoners and pretrial detainees in institutional settings may be subjected to strip searches and body cavity searches if they are conducted in a reasonable manner. Bell v. Wolfish, 441 U.S. 520, 561 (1979). In Bell, the court explained the test for reasonableness under the Fourth Amendment "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification

for initiating it, and the place in which it is conducted." Id. at 559.

In Bell, the Supreme Court evaluated the constitutionality of a blanket policy allowing strip searches with visual body cavity inspections, without regard to individualized suspicion, of all inmates at the county jail, including pretrial detainees, after every contact visit with a person from outside the institution. Id. at 559-60. The Supreme Court upheld the policy because the possibility of smuggling drugs, weapons, and other contraband into the institution presented significant and legitimate security interests. Id. Similarly, the Ninth Circuit has held that the rights of arrestees, placed in custodial housing with the general jail population, are not violated by a practice of strip searching each one of them as part of the booking process, provided that the searches are no more intrusive on privacy interests than those upheld in Bell, and the searches are not conducted in an abusive manner. Bull, 595 F.3d at 980-82. Furthermore, the officer's state of mind when conducting a search is not relevant to Fourth Amendment analysis; an action is reasonable, regardless of the individual officer's state of mind, as long as the circumstances, viewed objectively, justify the action. Nunez v. Duncan, 591 F.3d 1217, 1228 (9th Cir. 2010) (citing Brigham City, Utah v. Stuart, 547 U.S. 398, 404 (2006); see also Bull, 595 F.3d at 978 (individualized suspicion is not a requirement for a strip search in a prison environment).

United States District Court
For the Northern District of California

Plaintiff's version of events, taken as true, is insufficient to establish that the two strip searches were unreasonable. First, as indicated by the Supreme Court in <u>Bell</u>, 441 U.S. at 559, controlling contraband within a prison is a legitimate penological interest and the balance between the need for strip searches and the invasion of personal rights that the search entails must be resolved in favor of the prison's security concerns.  Second, even considering Plaintiff's conclusory statement that Officers Oleachea and Quitevis were "aggressive" when they searched him, his description of the actual searches establishes that they were not done in an excessive, vindictive or harassing manner. Plaintiff complains of being placed in waistchains and leg restraints.  However, these restraints are required by SVSP Operation Procedure 38, which lists the procedures to be used during a contraband watch.  <u>See</u> Respondent's Exhibit A, SVSP Operational Procedure 38 at ¶ 38.4.  Plaintiff's Fourth Amendment rights were not violated.

Furthermore, Officers Oleachea and Quitevis are entitled to qualified immunity on Plaintiff's Fourth Amendment claim because no constitutional violation occurred.  Even if Plaintiff's Fourth Amendment rights had been violated, it would have been reasonable for the officers to have believed that conducting an unclothed body search of Plaintiff, after observing him ingest what Officer Oleachea thought was contraband, was lawful.  <u>See</u> <u>Bell</u>, 441 U.S.

at 561 (prisoners may be subjected to strip search if conducted in reasonable manner).

Therefore, Defendants' motion for summary judgment on Plaintiff's Fourth Amendment claim is granted.

CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment is granted.  A judgment in favor of Defendants shall be entered separately.  The parties shall bear their own costs of suit.

IT IS SO ORDERED.


Dated:  3/20/2012

CLAUDIA WILKEN
United States District Judge